IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-23-00180-JD |
| | ) | |
| JOHNATHAN JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the United States' Combined Motion In Limine ("Motion")
[Doc. No. 19], to which Defendant Johnathan Johnson filed a response [Doc. No. 28].
The government seeks a pretrial ruling on the admissibility of (1) Mr. Johnson's
disciplinary log from the Federal Bureau of Prisons ("BOP"); and (2) related discipline
hearing officer ("DHO") reports detailing disciplinary code infractions Mr. Johnson
received while incarcerated in the BOP, specifically four infractions for engaging in
sexual acts of masturbation. The disciplinary log and related DHO reports are attached to
the Motion. *See* [Doc. Nos. 19-1 and 19-2].

A hearing was held on August 3, 2023, at which Mr. Johnson personally appeared
through his appointed counsel, Craig Hoehns, and the United States appeared through
Assistant United States Attorneys Brandon Hale and Allison Christian. The Court
received the testimony of BOP Special Agent Travis Leissner, who is an employee at the
Federal Transfer Center in Oklahoma City ("FTC Oklahoma City"). Government's
Exhibits 19-4 and 19-5 were offered and admitted for purposes of the hearing and

subsequently filed of record as attachments to the government's Supplement to its Combined Motion in Limine [Doc. No. 30]. Government's Exhibit 19-4 is a one-page chart that summarizes the incident reports for the four infractions that Mr. Johnson received while in BOP custody. *See* [Doc. No. 30-1]. The incident reports are at Government's Exhibit 19-5. *See* [Doc. No. 30-2].[1] The Court has reviewed all exhibits in their entirety. Upon consideration of the filings and evidence presented, and having reviewed the relevant law, the Court issues its ruling.

I.    **BACKGROUND**

Mr. Johnson is charged in a one-count Indictment [Doc. No. 1] with indecent exposure, in violation of 18 U.S.C. § 13(a) and Okla. Stat. tit. 21, § 1021(A)(1). While in custody at FTC Oklahoma City, Mr. Johnson allegedly masturbated while standing on a chair in front of his prison cell window in the presence of a female FTC employee. The government's Motion presents two issues for the Court: (1) whether the disciplinary code infractions Mr. Johnson sustained while incarcerated may be admitted as similar acts evidence under Federal Rule of Evidence 404(b); and (2) if so, whether the government may admit that evidence through a BOP records custodian under the business records exception to the hearsay rule at Federal Rule of Evidence 803(6).

The four disciplinary code infractions are as follows:

---

[1] The government does not seek to introduce the one-page summary or the incident reports at trial. They were introduced at the hearing under Rule 104(a) to assist the Court in making its preliminary, pre-trial determination on the admissibility of the DHO reports and disciplinary log.

1. <u>March 11, 2021 (USP Pollock)</u>: A female officer reportedly observed Mr. Johnson lying on the top bunk in his cell, with the lights on, stroking his erect penis. Mr. Johnson reportedly cleaned himself off with a tissue and then turned off the light in his cell. At the disciplinary hearing, Johnson denied the charge and presented his cellmate as a witness. Following the hearing, the DHO found that Johnson had committed the prohibited act of Engaging in a Sexual Act, a Code 205 infraction.

2. <u>December 29, 2022 (USP Pollock)</u>: A female officer, working suicide watch, reportedly observed Mr. Johnson pull his penis out through his smock with his left hand and stroke his penis. She ordered Johnson to stop, and he did. At the disciplinary hearing, Johnson admitted the charge. The DHO found that Johnson had committed the prohibited act of Engaging in a Sexual Act, a Code 205 infraction.

3. <u>December 29, 2022 (USP Pollock)</u>: A male officer, working suicide watch, reportedly observed Johnson, who was facing him and standing completely naked, holding his erect penis, and moving his right hand in a back-and-forth motion on his erect penis. At the disciplinary hearing, Johnson admitted the charge. The DHO found that Johnson had committed the prohibited act of Engaging in a Sexual Act, a Code 205 infraction.

4. <u>February 22, 2023 (USP Pollock)</u>: A female officer, while making rounds, reportedly noticed Johnson standing in the window, holding his penis in his right hand, and ejaculating on the glass. Johnson denied the charge at the disciplinary hearing. The DHO found that Johnson had committed the prohibited act of Engaging in a Sexual Act, a Code 205 infraction.

## II.   DISCUSSION

### A.   Rule 404(b)

Federal Rule of Evidence 404(b) generally prohibits evidence "that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v. United States*, 485 U.S. 681, 685 (1988); *see also* Fed. R. Evid. 404(b)(2) (identifying permitted uses). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."

3

*Huddleston*, 485 U.S. at 686. The government intends to offer Mr. Johnson's four prior masturbation incidents to show knowledge, intent, and lack of mistake. The Supreme Court has articulated a four-part test to determine whether evidence is admissible under Rule 404(b), and the Tenth Circuit has consistently applied that test. *See id.* at 691–92; *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000); *see also United States v. Henthorn*, 864 F.3d 1241, 1247–48 (10th Cir. 2017). The test requires that:

> (1) The evidence must be offered for a *proper purpose* under Rule 404(b);
>
> (2) The evidence must be *relevant* under Rule 401;
>
> (3) The *probative value* of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and
>
> (4) The district court, upon request, must have *instructed the jury* pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*Henthorn*, 864 F.3d at 1247–48 (emphasis in original). Admissibility of other acts evidence "involves a case-specific inquiry that is within the district court's broad discretion." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006) (citation omitted).

### 1) *Factor One: Proper Purpose*

"'Evidence is offered for a proper purpose if it is utilized for any of the 'other purposes' enumerated in Rule 404(b).'" *Henthorn*, 864 F.3d at 1248 (quoting *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011)). The government states that it intends to offer the other acts of masturbation for the purpose of showing Mr. Johnson's knowledge, intent, and lack of mistake. These are clearly proper purposes for the

4

introduction of Rule 404(b) evidence; thus, the government has fulfilled the first

*Huddleston* requirement.

### 2)      *Factor Two: Relevance*

The next question is whether the disciplinary code infractions for masturbation are

relevant to proving these proper purposes. "Relevant evidence tends to make a necessary

element of an offense more or less probable." *Davis*, 636 F.3d at 1298 (citing Fed. R.

Evid. 401(a)).

#### a)      *Similarity*

The Tenth Circuit "has previously recognized the probative value of uncharged

acts to show motive, intent, and knowledge . . . as long as the uncharged acts are similar

to the charged crime and sufficiently close in time." *Zamora*, 222 F.3d at 762 (citing

*United States v. Olivo*, 80 F.3d 1466, 1468–69 (10th Cir. 1996); *United States v. Bonnett*,

877 F.2d 1450, 1461 (10th Cir. 1989)). Although the uncharged act must be like the

charged offense, it does not need to be identical. *Zamora*, 222 F.3d at 762. "The more

similar the act or state of mind is to the charged crime, the more relevant it becomes." *Id.*

Although not identical, the four prior acts of masturbation are significantly similar

to the alleged facts underlying the charged offense. Additionally, the four prior acts and

the charged offense are sufficiently close in time. The first act transpired on March 11,

2021, while Mr. Johnson was an inmate at USP Pollock. A female officer reportedly

observed Mr. Johnson lying on the top bunk in his cell, with the lights on, stroking his

erect penis. Mr. Johnson reportedly cleaned himself off with a tissue and then turned off

the light in his cell. At the disciplinary hearing, Johnson denied the charge and presented his cellmate as a witness.

The second act occurred on December 29, 2022, at USP Pollock. The report indicates that a female officer, working suicide watch, reportedly observed Johnson pull his penis out through his smock with his left hand and stroke his penis. She ordered Johnson to stop, and he did. At the disciplinary hearing, Johnson admitted the charge.

The third act occurred the same day, just a few minutes later. A male officer, working suicide watch, reportedly observed Johnson, who was facing him and standing completely naked, holding his erect penis, and moving his right hand in a back-and-forth motion on his erect penis. At the disciplinary hearing, Johnson admitted the charge.

The fourth act occurred on February 22, 2023, while Mr. Johnson was still at USP Pollock. A female officer, while making rounds, reportedly noticed Johnson standing in the window, holding his penis in his right hand, and ejaculating on the glass. Johnson denied the charge at the disciplinary hearing. In all four instances, the DHO found that Mr. Johnson had committed the prohibited act of Engaging in a Sexual Act, a Code 205 infraction.

The charged offense allegedly occurred on April 17, 2023, while Mr. Johnson was incarcerated at FTC Oklahoma City. The government asserts that Johnson masturbated while standing on a chair in front of his prison cell window in the presence of a female FTC employee. The second, third, and fourth acts all occurred within months of the charged offense. The first act was about two years prior to the charged offense.

The Tenth Circuit has identified several non-exclusive factors in assessing similarity, including whether the acts occurred closely in time, whether there was geographical proximity among the acts, whether the charged offense and the other acts share similar physical elements, and whether the charged offense and the other acts are part of a common scheme. *See Mares*, 441 F.3d at 1158 (collecting cases). Here, the similarities are obvious. All four other acts and the charged offense involve allegations that Mr. Johnson masturbated in front of a BOP officer, most of those officers being female, while incarcerated in BOP custody within a span of approximately two years, and all but one of which occurred within months of each other.

b)    <u>*Independence from Character Inferences*</u>

Mr. Johnson asserts that the government's purpose in seeking to introduce the other acts evidence is to "plac[e] in the jurors' minds that if [Johnson] did it before that he must have done it again." Response at 2. "[O]ne cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." *United States v. Rodella*, 101 F. Supp. 3d 1075, 1109 (D.N.M. 2015) (citation omitted).

That is, the relevance of other acts evidence "cannot 'depend on a defendant likely acting in conformity with an alleged character trait' or require the jury to draw a 'chain of inferences dependent upon [a] conclusion' about the defendant's character." *Henthorn*, 864 F.3d at 1251 (quoting *United States v. Commanche*, 577 F.3d 1261, 1267, 1269 (10th Cir. 2009)). However, other act evidence need not "'be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to

7

another [proper] purpose is established *only* through the forbidden propensity inference.'"
*Henthorn*, 864 F.3d at 1252 (emphasis in original) (quoting *United States v. Rodella*, 804
F.3d 1317, 1333 (10th Cir. 2015)). As the Tenth Circuit pointed out in *Henthorn* and
*Rodella*, other acts evidence "remains admissible even if it has the potential
'impermissible side effect of allowing the jury to infer criminal propensity,' so long as
the jury '[i]s not *required* to make any such inferences in order to also' find willfulness or
intent." *See id.* (emphasis in original) (quoting *Rodella*, 804 F.3d at 1333–34).

Here, the government must prove that Mr. Johnson exposed his genitals
knowingly and willfully in a place where there were other persons present to be offended
and annoyed thereby. Using Mr. Johnson's prior acts of masturbation in BOP custody to
prove knowledge involves a kind of propensity inference (i.e., because he knowingly
masturbated in front of prison female staff in the past, he knowingly masturbated in front
of FTC employee H.R. in the instant case). However, "the inference is specific and does
not require a jury to first draw the forbidden general inference of bad character or
criminal disposition." *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007).
Instead, "it rests on a logic of improbability that recognizes that a prior act involving the
same knowledge decreases the likelihood that the defendant lacked the requisite
knowledge in committing the charged offense." *See id.*

Thus, "[a]lthough the evidence may allow the jury to draw negative inferences
about [Johnson's] character, such inferences are not required before a jury may find that
the prior incidents are relevant for a proper purpose"—i.e., that they bear on Johnson's

knowledge, intent, or lack of mistake in committing the charged offense. *See Henthorn*, 864 F.3d at 1254.

### 3)   Factor Three: Probative Value Versus Unfair Prejudice

The third *Huddleston* factor requires the Court to balance the probative value of the other acts evidence against its prejudicial effect under Rule 403. Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Excluding evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (citation omitted). "Unfair prejudice in the Rule 403 context 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *See id.* (quoting Fed. R. Evid. 403 advisory committee's note).

Mr. Johnson, citing several reasons, asserts that the probative value of the other acts evidence is substantially outweighed by its prejudicial effect. First, he contends that BOP program statements do not define what constitutes a "sexual act" under a Code 205 infraction. Second, he asserts that it is unclear whether an inmate must willfully and intentionally expose his genitals in a lewd manner to others to commit a Code 205 infraction, or if the Code 205 infraction can involve private masturbation. Third, he asserts that in two instances he denied performing the sexual act and that in one of those instances he had a supporting witness at his disciplinary hearing. Fourth, he argues that

9

the DHO reports do not indicate whether he willfully and knowingly exposed himself in a lewd way and that in two instances he was on suicide watch; thus, he had no choice whether he was watched by others. Fifth, he contends that no video evidence from the four prior acts was preserved, and the officers who reported the accusations were not subject to cross-examination at the disciplinary hearing. Instead, Johnson asserts that the DHO relied on the officers' incident reports in making her findings. Finally, he contends that the DHO, as a BOP employee, has an interest in the outcome and the BOP has an interest in finding violations to keep order.

The Court construes Mr. Johnson's arguments as challenging under Rule 403 the sufficiency of the evidence and due process and the definition of "sexual acts" under prison code 205.

> a.     _Sufficiency of the Evidence/Due Process_

The Court construes several of the above arguments as a due process assertion challenging the sufficiency of the evidence to support Mr. Johnson's disciplinary infractions. Due process requires that there be some evidence to support the decision of the hearing officer. _See Mitchell v. Maynard_, 80 F.3d 1433, 1444 (10th Cir. 1996) (explaining it is "well settled" that an inmate's liberty interest in his earned good time credits cannot be denied without minimal due process safeguards). However, prison disciplinary hearings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." _Wolff v. McDonnell_, 418 U.S. 539, 556 (1974). Additionally, a reviewing court can uphold a prison disciplinary conviction "even if the evidence supporting the decision is 'meager.'" _Mitchell_, 80 F.3d

at 1445 (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457

(1985)). And information included in an incident report alone may constitute "some

evidence" supporting the disciplinary infraction. *See Ruelas v. Zuercher*, 240 F. App'x

796, 797 (10th Cir. 2007) (unpublished); *Longstreth v. Franklin*, 240 F. App'x 264, 267

(10th Cir. 2007) (unpublished).

Here, there is no evidence that Mr. Johnson appealed the DHO's findings for any

of the four disciplinary code infractions, and in two instances he admitted the violations.

Further, the Court is satisfied from its review of the DHO reports and incident reports that

there is "some evidence" to support the DHO's findings. With respect to the March 11,

2021 incident, the DHO found that Mr. Johnson committed the prohibited act based on

the witnessing staff member's written report that "Johnson stroked his genitals in front of

them." [Doc. No. 19-2 at 3]. With respect to both incidents on December 29, 2022, the

DHO found that Mr. Johnson had committed the prohibited act "based on the written

account of the reporting staff member and the admission statement made by inmate

Johnson." *See id.* at 6, 10. Finally, with respect to the February 22, 2023 incident, the

DHO found that Mr. Johnson had committed the prohibited act based on the "greater

weight" given to the reporting staff member's written report. *See id.* at 14.

The "some evidence" standard controls, and the Court finds that the DHO's

decisions satisfy the requirements of due process because they were supported by the

statements of prison officers in their incident reports. *Hill*, 472 U.S. at 457.

b.   *Definition of a "Sexual Act" under Prison Code 205*

Next, Mr. Johnson argues that "sexual act" is not defined under BOP's program

statements. BOP Program Statement 5270.09, titled "Inmate Discipline Program,"

provides that a Code 205 infraction for Engaging in Sexual Acts falls under the high

severity level for prohibited acts. That same program statement sets forth the available

sanctions for high security level prohibited acts, but it does not define "sexual act."

"Nevertheless, all courts which have considered this issue conclude . . . that a violation of

prison code 205 includes the sexual act of masturbation." *Hill v. Oliver*, No. 13-cv-

03236-CMA-CBS, 2014 WL 3864888, at * 4 (D. Colo. Aug. 6, 2014) (citing *Neal v.

Daniels*, No. 11-CV-01361 GSA HC, 2012 WL 895424, at *2 (E.D. Cal. Mar. 15, 2012)

(collecting cases which have concluded that a violation of prison code 205 includes

masturbation); *Griffin v. Brooks*, 13 F. App'x 861, 864 (10th Cir. 2001) (unpublished)

(noting that it "is unquestionable that masturbation is a 'sexual act'" under prison code

205)). Moreover, Mr. Johnson does not point to any authority that prison code 205

requires another person to constitute a "sexual act."

c.   *Minimizing Any Prejudicial Effect*

The four prior acts are probative of Mr. Johnson's knowledge of the wrongfulness

of his alleged conduct in the instant offense and his intent to commit the charged conduct.

They also tend to prove the charged conduct was not accidental. Further, the potential

prejudice to Mr. Johnson does not outweigh the highly probative nature of such evidence.

The Court also finds that there are several ways in which the risk of prejudice can be

minimized.

First, Mr. Johnson's counsel is free to elicit testimony that disciplinary hearings are not akin to an impartial tribunal—for instance, the proceedings are run by the prison and inmates are not afforded counsel. Second, the government at the Motion hearing proposed an alternative to admitting the DHO reports. That is, if the Court excludes the DHO reports, the government will seek to admit Mr. Johnson's redacted disciplinary log [Doc. No. 19-1] (redacting the nonsexual act code infractions), and a government witness would testify as to the four infractions. Then, the Court could issue appropriate instructions to the jury to disregard and not speculate as to any redactions in the disciplinary log. *See United States v. Herrera*, 51 F.4th 1226, 1273 (10th Cir. 2022) (explaining that courts enjoy discretion to alleviate prejudice through limiting instructions and that it is presumed that juries follow those instructions). The Court will discuss the government's proposed alternative in more depth below as it relates to the business records exception argument. Finally, upon request, the Court could give any appropriate limiting instruction.

### 4)        *Factor Four: Limiting Instruction*

The fourth and final *Huddleston* factor requires the district court, upon request, to instruct the jury that it may consider the evidence only for limited purposes and that it may not be considered as proof of Mr. Johnson's character or his propensity to engage in illegal activity. The government has indicated it does not oppose the use of a proper limiting instruction for any evidence admitted under Rule 404(b). *See* Motion at 5, n.2. The Court will allow the parties to submit proposed limiting instructions.

13

Thus, the Court finds that all the *Huddleston* factors have been met.[2] The government will need to redact the unrelated disciplinary code infractions in Doc. No. 19-1—which reference infractions for being in an unauthorized area, interfering with count, tattooing or self-mutilation, and refusing work assignments—before seeking to admit the disciplinary log at trial.[3]

**B.      Rule 803(6)**

The government proposes to introduce the disciplinary log and DHO reports through a BOP records custodian under the business records exception to the hearsay rule. Mr. Johnson asserts that reports generated by correctional officers fall outside the scope of the business records exception. He also asserts that the DHO reports contain layered hearsay because they include narratives from BOP officers and statements from inmates, who are under no business duty to report.

Federal Rule of Evidence 803(6) provides that certain records of regularly conducted business activity are admissible for their truth even though they contain hearsay. To satisfy the business records exception, a record "must have been prepared in the normal course of business, made near the time of events at issue, based on the

---

[2] The Court declines the government's request to exclude categorically testimony regarding the sanctions Mr. Johnson received within the BOP for the four infractions. If the prior acts are admitted to prove intent, knowledge, and absence of mistake, then the penalty received for those prior acts could also bear on those same subjects. Additionally, the only case cited by the government, *Porter v. Coughlin*, 421 F.3d 141, 149 (2d Cir. 2005), does not directly speak to this issue.

[3] Defense counsel at the Motion hearing preserved any objection to redacting the disciplinary log. The Court directs counsel for the parties to confer and advise the Court of their position on this issue before trial commences on August 16, 2023.

14

knowledge of someone with a business duty to transmit such information, and there must be an indication that the methods, sources, and circumstances of preparation were trustworthy." *United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018) (citing *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008)).

### 1)   *Disciplinary Log*

Based on Agent Leissner's testimony at the Motion hearing, the Court finds that upon laying a proper foundation for its introduction the disciplinary log is admissible under the business records exception. "A prison is clearly a 'business' within the meaning of the term in . . . the rule." *Stone v. Morris*, 546 F.2d 730, 738 (7th Cir. 1976). The disciplinary log [Doc. No. 19-1] is a record of Johnson's disciplinary code infractions committed while he was in the custody of the BOP. The dates listed on the disciplinary log appear to match the discipline hearing dates in the DHO reports [Doc. No. 19-2]. Thus, the entries appear to have been made near the time of the events at issue.

Agent Leissner testified that inmate disciplinary logs are maintained electronically in a database accessible by all BOP staff. Entries to the log are added by correctional officers as incidents occur and are updated following findings at a disciplinary hearing. The logs are kept in an inmate's official prison file. According to his testimony, the BOP regularly maintains and utilizes disciplinary logs to make determinations about an inmate's custody or security level, programming, and housing. Further, Mr. Johnson has not shown that "the method or circumstances of preparation [of the disciplinary log itself] indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(6)(E).

Additionally, other courts have found that similar prison records constitute business records under Rule 803(6). *See*, *e.g.*, *United States v. Newman*, 468 F.2d 791, 795–96 (5th Cir. 1972) (explaining that prison admission summaries compiled by prison officials in the regular course of business when inmates are first admitted falls under the official records exception to the hearsay rule); *Stone*, 546 F.2d at 738 (explaining where a memorandum was prepared by prison staff and included in the official prison files, it was made in the regular course of prison business activity and because the memorandum was retained as part of the inmate's prison file it was a type of document routinely relied upon by prison officials); *Wheeler v. Sims*, 951 F.2d 796, 801–05 (7th Cir. 1992) (concluding that prison documents refuting the inmate's claims of paralysis were properly admitted under the business records exception).

### 2)     *DHO Reports*

The DHO reports present a slightly different analysis given the layered hearsay concerns. Agent Leissner testified that Serena English prepared the four DHO reports [Doc. No. 19-2]. Ms. English was the DHO for all four hearings, as indicated in the reports. According to Agent Leissner, as a DHO, Ms. English conducts administrative hearings as part of the discipline process to determine if a prohibited act was committed by the inmate and, if such act was committed, what sanctions to impose. Agent Leissner testified that it is the regular practice of DHOs in the BOP to prepare these reports within 14 days of the disciplinary hearing. A review of each respective disciplinary hearing date compared to the date Ms. English prepared her DHO report indicates that all four reports were prepared within 14 business days of their respective hearing. *See* [Doc. No. 19-2].

16

Like the disciplinary log, the BOP utilizes DHO reports to determine an inmate's custody and security level and recommended housing. DHO reports are stored in an electronic database accessible to all BOP staff. Thus, the DHO reports appear to have been prepared in the normal course of prison business, near the time of the events at issue, and based on the knowledge of the DHO involved in the hearing. Arguably, the DHO also has a business duty to transmit such information. Mr. Johnson, however, takes issue with the DHO's narratives in her reports that include witness statements from BOP officers who reported the incidents, Mr. Johnson's statements, and other inmate witness statements.

The business records exception to the hearsay rule "is based on a presumption of accuracy." *United States v. Snyder*, 787 F.2d 1429, 1433 (10th Cir. 1986). The presumption is rendered where "the information is part of a regularly conducted activity, kept by those trained in the habits of precision, and customarily checked for correctness." *See id.* However, "[d]ouble [or layered] hearsay," arises "when the record is prepared by an employee with information supplied by another person." *United States v. Blechman*, 657 F.3d 1052, 1065 (10th Cir. 2011).

If both the source and the recorder of the information are acting in the regular course of business, the multiple hearsay is excused under Rule 803(6). But if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have. *See Snyder*, 787 F.2d at 1434;

*Blechman*, 657 F.3d at 1065; *see also* the advisory committee's note to Fed. R. Evid. 803(6) (explaining that if the supplier of information does not act in the regular course, "an essential link is broken," and no assurance of accuracy extends to the information). "'An illustration is the police record containing information by the bystander; the officer qualifies as acting in the regular course[,] but the informant does not.'" *Snyder*, 787 F.2d at 1434 (emphasis omitted) (quoting the advisory committee's note to Fed. R. Evid. 803(6)).

Here, Ms. English, along with the BOP officers who provided statements, are arguably under a business duty to provide accurate information to the BOP. Mr. Johnson and the other inmate witnesses whose statements are included in the DHO reports do not have a business duty. Thus, their statements would fall within the third-party/outsider category because they cannot be given the presumption of reliability and regularity accorded a business record. *See id.* (concluding that the trial court did not err in refusing to admit the statements of two inmates as part of the officer's report).

Nevertheless, the Court still must conduct a balancing analysis under Rule 403 before admitting the DHO reports. As indicated above, the government has proposed admitting the redacted disciplinary log without the related DHO reports. Under Rule 403, the Court may exclude relevant evidence to avoid confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. The Court wants to avoid any mini trial of these other four acts; thus, it is not necessary for the jury to hear the same evidence multiple times and through multiple exhibits. As such, the Court finds that the admission of the redacted disciplinary log alone will satisfy the purposes for which the

18

government intends to introduce this evidence under Rule 404(b), and admission of the related DHO reports would needlessly present cumulative evidence. Assuming the government lays the proper foundation for admitting the redacted disciplinary log, a government witness can testify in conjunction with the disciplinary log regarding the four disciplinary code infractions.

## III.   <u>CONCLUSION</u>

For these reasons, the Court GRANTS in part and DENIES in part the United States' Combined Motion in Limine [Doc. No. 19], subject to Mr. Johnson's right to renew his objections at the appropriate time during trial. The Court would caution the parties that any objection should be made and will be considered by the Court outside the hearing of the jury. The Court requests that the parties submit limiting instructions by **Tuesday, August 15, 2023, at 12:00 p.m.**

IT IS SO ORDERED this 10th day of August 2023.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE